O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| MANUEL LEDESMA and LOUIS BARRAZA,<br><br>           Plaintiffs,<br><br>    v.<br><br>ARTURO CORRAL, LUIS CORONEL, EMPIRE PRODUCTIONS INC., and WORLDWIDE EMPIRE PRODUCTIONS, LLC,<br><br>           Defendants. | Case № 2:15-cv-04266-ODW-GJS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [53]** |

## I.   INTRODUCTION

Plaintiffs Manuel Ledesma ("Ledesma") and Louis Barraza ("Barraza") bring this dispute over the events preceding the launch of Luis Coronel's ("Coronel") professional music career. Plaintiffs allege Defendant Coronel, along with Defendants Auturo Corral ("Corral"), Empire Productions Inc. ("Empire"), and Worldwide Empire Productions, LLC (collectively, "Defendants"), have deprived them of substantial compensation for their production and management efforts and infringed upon their existing copyrights. Accordingly, Plaintiffs now bring claims for copyright

infringement, breach of contract, breach of fiduciary duty, accounting, and fraud. (Second Am. Compl. ["SAC"] ¶ 1, ECF No. 47.) After this Court granted Coronel's first Motion to Dismiss, Plaintiffs filed a Second Amended Complaint. (ECF Nos. 43, 47.) Now all Defendants move to dismiss (Motion to Dismiss ["Mot."], ECF No. 53.) For the reasons below, the Court **GRANTS** Defendants' Motion to Dismiss with prejudice.[1]

## II. FACTUAL BACKGROUND

Plaintiffs Ledesma and Barazza claim that, before turning him into the "Latin Justin Bieber," Luis Coronel was just an obscure singer with virtually no following. (SAC ¶ 1.) After allegedly entering into a partnership agreement ("the Agreement") with the CEO of Empire Productions, Auturo Corral, to join the company in late 2012, Plaintiffs worked to sign Coronel as a recording artist. (*Id.* ¶¶ 16–17.) Once they signed Coronel to Empire in January 2013, Ledesma and Barraza allege that they spent several months aggressively promoting Coronel's music career. (*Id.* ¶ 18.) Specifically, Plaintiffs allege that they worked on Coronel's social media strategy and marketing, and that they spent substantial time recording and promoting Coronel's first songs. (*Id.*) Indeed, Ledesma claims he was also authorized to withdraw funds from an Empire bank account in order to pay performance costs when Coronel went on tour. (*Id.* ¶ 19.)

Plaintiffs next allege that at one of Coronel's live shows in California, the parties were introduced to Angel Del Villar, owner and CEO of Del Records[2] ("Del"), a well-known and established record label in the regional Mexican market. (*Id.*) They began discussions about working together to launch Coronel as a more mainstream

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] Originally named as a Defendant, Plaintiffs voluntarily dismissed Del Records on October 29, 2015, and the Court granted the motion. (ECF Nos. 38, 40.)

2

1 artist. (*Id.*) Empire entered into an agreement with Del for Coronel's recording
2 services in September 2013. (*Id.* ¶ 20.)

3 Ledesma alleges that he produced the songs on Coronel's debut album, *Con la
4 Frente en Alto*. (*Id.*) He also claims that the album, released in September 2013,
5 includes a recording of Coronel performing Ledesma's musical composition "Eres
6 Tú." (*Id.*) Ledesma alleges that he went on to produce Coronel's second album,
7 *Quiero Ser Tu Dueño*, over the following year, and that the album included a
8 recording of Coronel performing Ledesma's musical composition "Solo Soy Yo."
9 (*Id.*) Ledesma claims he received credits as a producer and composer on both albums.
10 (*Id.*)

11 In late 2014, Ledesma and Barraza stopped working for Empire. (*Id.*)
12 Plaintiffs allege that they never received any net income as mandated by the
13 Agreement. (*Id.* ¶ 33.) Ledesma also went onto register the "Eres Tú" and "Solo Soy
14 Yo" compositions with the U.S. Copyright Office. (*Id.*) Plaintiffs claim that despite
15 Ledesma's registration of the compositions and Corral having knowledge of this fact,
16 Corral and Empire continued to use the compositions without Ledesma's consent. (*Id.*
17 ¶¶ 34–35.) Defendants, in turn, argue that Ledesma authorized the compositions' use
18 even before their copyright registration, and that an implied license authorized their
19 continued use. (Mot. 4–5.)

20 Ledesma first filed his Complaint against Defendants on June 8, 2015 (ECF No.
21 1.) On September 1, 2015, he filed his First Amended Complaint ("FAC"). (ECF No.
22 24.) Corral and Empire answered on September 29, 2015. (ECF No. 27.) On that
23 same day, Coronel moved to dismiss and Empire moved to strike portions of the FAC.
24 (ECF Nos. 29, 30.) This Court granted both motions, but with leave to amend. (ECF
25 No. 43.) Plaintiffs filed the SAC on January 4, 2016 and, on January 22, 2016,
26 Defendants moved to dismiss. (ECF Nos. 47, 54.) Plaintiffs and Defendants filed
27 timely opposition and reply papers, respectively. (ECF. Nos. 54, 55.)

28

## III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed. Fed. R. Civ. P. 15(a). But a court may deny leave to amend when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

//

//

4

## IV. DISCUSSION

**A. Copyright Infringement**

Plaintiffs first allege three claims of copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*. They argue that Defendants continue to use Ledesma's "Solo Soy Yo" and "Eres Tú" compositions, despite full knowledge of Ledesma's copyright interests. (SAC ¶¶ 45, 47.) Defendants argue that Plaintiffs fail to allege sufficient facts for the claim to survive a motion to dismiss or, alternatively, that Plaintiffs granted use of the compositions through an implied license. (Mot. 4–5.)

A cognizable claim for copyright infringement exists where the plaintiff alleges direct infringement, contributory infringement, or vicarious infringement. *Ellison v. Robertson*, 356 F.2d 1072, 1076 (9th Cir. 2004). For the below reasons, the Court finds that Plaintiffs' SAC does not raise cognizable copyright claims under any theory.

*1. Direct Infringement*

Under the Copyright Act, a plaintiff states a claim for direct infringement by demonstrating (1) ownership of a valid copyright and (2) a defendant's unauthorized use of at least one of the copyright owner's exclusive rights. *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

This Court previously took judicial notice of the fact that the valid registration dates for the "Solo Soy Yo," and "Eres Tú" compositions are April 9, 2015, and April 13, 2015, respectively.[3] Therefore, the Court acknowledges that the first prong, whether a valid copyright exists, is met. However, even taking these as the operative dates of copyright registration, Plaintiffs have not alleged more than threadbare assertions in support the second prong of their direct infringement claim. No facts to support the unauthorized use of these copyrighted materials are presented to the Court. Indeed, Plaintiffs' limited factual support is that "Coronel's performance of sound

---

[3] *See* Order Granting Motions to Dismiss and Strike 6 n.2, ECF No. 43.

recordings embodying the Composition without Ledesma's permission constitutes direct infringement." (SAC ¶ 48.) Plaintiffs are simply stating legalese in lieu of offering supporting facts. Moreover, Plaintiffs' FAC only stated that Coronel "has profited from the copyright infringement set forth herein." (FAC ¶ 7.) The Court hardly sees how the SAC's additional phrasing provides the requisite meat for the FAC's skeletal copyright claims; merely reciting the magic words of a cause of action is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 663. As such, Plaintiffs' factual allegations are not specific enough to raise a right to relief above more than just a speculative level. *Twombly*, 550 U.S. at 555. Without more than a bare recitation of a few terms of art, the Court finds no support for a direct infringement claim.

2. *Contributory Infringement*

Plaintiffs next contend that Defendants are contributorily infringing on Ledesma's copyrights. (SAC ¶¶ 36–37.) To make out a claim for contributory infringement, a plaintiff must show that a defendant intentionally induced or actively encouraged direct infringement. *Metro-Goldwyn-Mayer (MGM) Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

Plaintiffs' claim for contributory infringement suffers from similar factual deficiencies as in their claim for direct infringement, and only sparse, conclusory allegations are littered throughout the SAC as evidence contributory infringement. For example, Plaintiffs claim that "Corral, through Empire, induced and encouraged Coronel to commit infringing acts" and that "Corral … contributed to the infringement by inducing third parties to commit infringing acts, such as licensing the recordings embodying Compositions …." (SAC ¶¶ 36–37.) Again, these paltry allegations do not permit the Court to find anything other than a speculative right to relief. *Twombly*, 550 U.S. at 555. Accordingly, Plaintiffs contributory infringements claims do not survive Defendants' Motion to Dismiss.

### 3. Vicarious Infringement

Lastly, Plaintiffs allege vicarious infringement. (SAC ¶ 37.) To state a claim for vicarious infringement, a plaintiff must show that the defendant (1) has the right and ability to control the direct infringing activity and (2) derives a direct financial benefit from the infringing activity. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996); *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004). "Financial benefit exists where the availability of infringing material acts as a 'draw' for customers." *Ellison*, 357 F.3d at 1072.

Here, Plaintiffs allege Corral, as the sole officer and CEO of Empire, had the exclusive power and ability to control Empire's business activities and its artists, including Coronel. (SAC ¶ 37.) Yet the rest of Plaintiffs' allegations are again conclusory; Plaintiffs merely state that "Corral chose not to exercise his ability to stop or limit the infringement, and has personally profited from the infringement and continues to do so." (*Id.*) No facts are supplied to bolster these assertions. At the risk of sounding like a broken record, the Court again finds that there are insufficient factual allegations, even when taken as true, to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

Because Plaintiffs have failed to adequately allege facts to support a copyright claim under any infringement theory, the Court **GRANTS** Defendants' Motion. Moreover, because Plaintiffs failed to provide the Court with the necessary facts after the Court granted leave to amend, the Court grants the Motion with prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that "repeated failure to cure deficiencies by amendments previously allowed" is an appropriate justification to deny leave to amend).

### B. Plaintiffs' Additional Claims: Breach of Contract, Breach of Fiduciary Duty, Accounting, and Fraud

In their SAC, Plaintiffs raise, for the first time, additional state law claims. (SAC ¶ 1.) Because the Court will not entertain such last-minute pleadings without a

party first seeking leave to amend, these claims are likewise **DISMISSED** with prejudice.

Rule 15 addresses amended pleadings. Fed. R. Civ. P. 15. Rule 15(a) permits a party to amend a pleading "once as a matter of course" any time before a responsive pleading is served, or else, "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). When leave is required, the plaintiff must ordinarily file a motion that: (1) is in writing; (2) states with particularity the grounds for seeking the order; and (3) states the relief sought. Fed. R. Civ. P. 7(b)(1).

Plaintiffs here have failed to file a motion to add four additional causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) accounting; and (4) fraud. Neither the FAC, nor the proposed SAC presented to the Court, mentions the claims Plaintiffs now seek to include at the eleventh hour. (*See, e.g.*, Proposed SAC, ECF. No. 33-1.) The rest of Plaintiffs' SAC can be dismissed on this ground alone. *See In re Bello*, 622 Fed. Appx. 663, 664 (9th Cir. 2015) ("[Plaintiff] cannot dismiss his failure to even ask for leave to add new claims as a 'mishap' or 'technicality' where the court had already dismissed his complaint twice and granted leave only to fix deficiencies in the existing complaint.").

Because they never sought leave to add these claims, only Plaintiffs know their motivation for doing so without permission from either the Court or Defendants. Fed. R. Civ. P. 15(a)(2). Moreover, Plaintiffs had several opportunities to properly plead facts known at the time of the original complaint. *See Swanson v. U.S. Forest Servs.*, 87 F.3d 339, 345 (9th Cir. 1996); *Peterson v. Cal.*, No. 1:10-cv-01132-SMS, 2011 WL 3875622, at *3 (E.D. Cal. Sept. 1, 2011) ("Whether the moving party knew or should have known the facts and theories raised in the proposed amendment at the time it filed its original pleadings is a relevant consideration in assessing untimeliness."). Furthermore, the Court's decision to grant leave to file a second amended complaint was premised specifically on the representations made in the Proposed SAC. As noted in its Order Granting Leave to Amend, the Court stated:

"Because the allegations of additional facts could potentially rise to create a cognizable *copyright infringement claim* … the Court GRANTS leave to file a Second Amended Complaint." (Order Granting Motion to Dismiss 5, ECF No. 43.) (emphasis added.) Accordingly, the rest of Plaintiffs' claims are **DISMISSED** with prejudice.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss **WITH PREJUDICE**.

**IT IS SO ORDERED.**

March 2, 2016

*[signature]*
_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**